[Cite as *State v. Woods*, 2026-Ohio-2352.]

IN THE OHIO COURT OF APPEALS
FIFTH APPELLATE DISTRICT
STARK COUNTY, OHIO

| | |
|---|---|
| STATE OF OHIO, | Case No. 2025CA00022 |
|    Plaintiff - Appellee | <u>Opinion & Judgment Entry</u> |
| -vs- | Appeal from the Court of Common Pleas of Stark County, Case No. 2013CR0399 |
| SAMUEL DARRELL WOODS, | Judgment:  Affirmed |
|    Defendant - Appellant | Date of Judgment:  June 17, 2026 |

BEFORE: Craig R. Baldwin, Kevin W. Popham, and David M. Gormley, Judges

APPEARANCES: Kyle L. Stone (Stark County Prosecuting Attorney) & Lisa A. Nemes (Assistant Prosecuting Attorney), Canton, Ohio, for Plaintiff-Appellee; Kimberly Kendall Corral & Gabrielle M. Ploplis, Cleveland, Ohio, for Defendant-Appellant.

*Gormley, J.*

{¶1}   Defendant Samuel Woods challenges the judgment of the Court of Common Pleas of Stark County denying his request for permission to file a new-trial motion.  He wanted a new trial because he had discovered what he says was new evidence that had not been available to him when he was convicted on murder and other felony charges several years earlier.  Under the relevant rule that governed his request, Woods was required to show that he had been "unavoidably prevented" from discovering the new evidence sooner.  He did not offer convincing proof on that issue, in the trial court's view, so the judge denied his motion without holding a hearing.

{¶2}   Woods asks us to review both the trial court's decision denying his request for permission to seek a new trial as well as the trial court's failure to hold a hearing on his request.  Because we see no error in the trial court's handling of the issue, we affirm the judgment.

**The Key Facts**

{¶3} In February 2013, R.N. was shot in the parking lot of a bar in Canton, Ohio. While he was at a local hospital receiving treatment for his gunshot wound, R.N. identified Samuel Woods as the person who had shot him. Hours later, R.N. succumbed to his injuries. Soon thereafter, Woods was indicted on several felony charges in connection with R.N.'s death.

{¶4} At his July 2013 jury trial on the charges of murder and felonious assault, Woods was identified by multiple witnesses as the person who had shot R.N., and the jury found Woods guilty on both charges. One additional firearm-related charge was tried to the judge, and Woods was found guilty on that charge too. After he was sentenced, Woods appealed, and we affirmed the convictions in *State v. Woods*, 2014-Ohio-2375 (5th Dist.).

{¶5} In November 2024 — more than a decade after he was convicted on the charges — Woods filed a motion seeking permission to file a motion for a new trial. Woods claimed in his motion that he had discovered new evidence, and he said that he had been unavoidably prevented from discovering that new evidence either before the trial or in the four-month period after the trial, as Criminal Rule 33 requires. Woods's motion was supported by an affidavit from someone who claimed to have witnessed the shooting and who swore that Woods was not the shooter.

{¶6} The trial court denied Woods's motion seeking permission to pursue the new-trial claim, finding that Woods had failed to show that, before or soon after the trial, he had been unavoidably prevented from discovering the new evidence described in the affidavit. Woods now appeals.

**The Trial Court Acted Within the Scope of its Discretion When that Court Denied Woods's New-Trial Request**

{¶7} In his first assignment of error, Woods argues that the trial court should have granted his request seeking permission to be heard on the merits of his new-trial motion.

{¶8} "Appellate review of a trial court's ruling on a motion for leave to file a motion for a new trial is conducted under an abuse-of-discretion standard." *State v. Hatton*, 2022-Ohio-3991, ¶ 29. An abuse of discretion is more than a mere error of law; "it implies that the court's attitude is unreasonable, arbitrary[,] or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶9} A trial court may grant a new trial when an event or circumstance that materially and adversely affected the defendant's "substantial rights" has occurred. Crim.R. 33(A) (spelling out six events or circumstances that may require a new trial and indicating that any new-trial request must allege that one or more of those events or circumstances has occurred). In our case, Woods pointed to the last paragraph of Criminal Rule 33(A), which allows a defendant to seek a new trial when he or she has found new material evidence that "could not with reasonable diligence have [been] discovered and produced at the trial." Crim.R. 33(A)(6).

{¶10} Not surprisingly, the rule spells out deadlines for any new-trial motions. When, as in this case, a new-trial request relies on newly discovered evidence, the defendant's motion must, under Criminal Rule 33(B), be filed within 120 days after the judge or jury returns a verdict in the case.

{¶11} New-trial requests filed after that 120-day deadline are permitted under the rule, but they in turn face an extra hurdle: "the defendant must show by clear and

convincing proof that he or she was unavoidably prevented from discovering the evidence within the 120-day period." *State v. McAlpin*, 2026-Ohio-148, ¶ 16 (citing Crim.R. 33(B)). And though that rule "does not expressly require a defendant to file a motion for leave to present that proof," the Supreme Court of Ohio has "consistently construed Crim.R. 33(B) to require a defendant to obtain leave of court before filing" a new-trial motion based on newly discovered evidence. *McAlpin* at ¶ 17. *See also Hatton*, 2022-Ohio-3991, at ¶ 30 ("When a defendant seeks leave to file a motion for a new trial under Crim.R. 33(B), the trial court may not consider the merits of the proposed motion for a new trial until after it grants the motion for leave").

{¶12} Under that two-step process contemplated by Criminal Rule 33(B), then, Woods — who alerted the trial court to the existence of his new evidence long after the rule's 120-day period — first had to seek the trial court's permission to begin the new-trial process. And as part of that leave-seeking first step, Woods was obligated to offer clear and convincing proof that he was unavoidably prevented from discovering his new evidence within the 120-day period. If and only if the trial court concluded that Woods was in fact unavoidably prevented from discovering his new evidence sooner could the trial court move on to the second step: considering the merits of the new-trial motion itself. (Under the rule, in fact, the new-trial motion need not be filed until after the motion for permission is granted by the trial court. *See* Crim.R. 33(B) (explaining that if clear and convincing proof is offered about the defendant having been unavoidably prevented from discovering the new evidence within the time limit set by the rule, then the new-trial motion itself is to be filed "within seven days from an order of the court" finding that the rule's first step has been satisfied).)

**{¶13}** In this case, of course, the trial court did not move beyond the first of the two steps because, in the trial court's view, Woods did not offer the necessary proof to clear the unavoidably-prevented hurdle.

**{¶14}** So just what does that term "unavoidably prevented" mean? Those words appear not only in Criminal Rule 33(B) but also in R.C. 2953.23(A)(1)(a), which governs the filing of tardy petitions for post-conviction relief, and we have explained that those twin two-word phrases should be interpreted the same way in those two provisions. *See State v. Barnes*, 2022-Ohio-4613, ¶ 39 (5th Dist.). To be unavoidably prevented, multiple courts tell us, is to have had no knowledge about the new evidence and to have had no way, even with reasonable diligence, to learn about the new evidence before the expiration of the rule's 120-day post-verdict period. *See, e.g., State v. Lane*, 2026-Ohio-648, ¶ 6 (9th Dist.) ("Unavoidable delay results when the party had no knowledge of the existence of the ground supporting the motion for a new trial and could not have learned of the existence of that ground within the required time in the exercise of reasonable diligence") (citation and quotations omitted); *State v. McKnight*, 2021-Ohio-2673, ¶ 11 (4th Dist.) ("A party is unavoidably prevented from filing a motion for new trial if the party had no knowledge of the existence of the ground supporting the motion for new trial and could not have learned of the existence of that ground within the time prescribed for filing the motion for new trial in the exercise of reasonable diligence") (brackets and citation omitted); *State v. Taylor*, 2021-Ohio-1670, ¶ 59 (2d Dist.) ("a defendant fails to demonstrate that he or she was unavoidably prevented from discovering the new evidence or the basis of the claim when he or she would have discovered that information earlier with due diligence and some effort") (citation and quotations omitted).

**{¶15}** Woods's motion for permission to file a motion for a new trial relied on an affidavit from a woman identified in the trial court's order by the pseudonym "Mary Roe." According to Roe's affidavit, she was at the bar where the shooting took place in 2013, heard two gunshots, and saw a man named Leroy Dixon standing with a gun in his hand roughly three feet from the victim — R.N. — right after the shooting. According to Roe, Leroy Dixon then ran away, climbed into a pickup truck, and drove away. Roe also says in her affidavit that she was never contacted by any law-enforcement officers after the shooting and did not reach out to those officers herself because she was afraid for her safety, "did not want to be involved," and did not even know that Woods had been charged with any crimes tied to the shooting.

**{¶16}** That affidavit from Mary Roe is dated March 11, 2024. As the Supreme Court has noted, though, "[a] date merely reveals when the affidavit was executed or provided, not when the testimony it contains became available." *State v. Johnson*, 2024-Ohio-134, ¶ 25. Woods, to clear the unavoidably-prevented hurdle, had an obligation to "submit evidence of specific facts beyond the supporting affidavit's date to explain why . . . [he] was unable to timely obtain an affidavit" within the 120-day period set by Criminal Rule 33(B). *Id.* at ¶ 27.

**{¶17}** Multiple Ohio appellate courts have explained that when an affidavit supporting a new-trial request fails to offer a sufficient explanation as to why the new evidence described in it could not have been obtained before the trial or during the rule's 120-day post-trial period, the new-trial movant must offer something more to clear the unavoidably-prevented hurdle. *See State v. Tucker*, 2025-Ohio-923, ¶ 22 (8th Dist.) (an affidavit failed to make the required unavoidably-prevented showing where that affidavit did not indicate where or how the affiant had been discovered or offer any information

suggesting that the affiant had remained quiet or was unable to speak until recently); *State v. Hunter*, 2024-Ohio-4658, ¶ 9 (9th Dist.) ("while Mr. Hunter averred he did not know S.B. at the time of the murder, Mr. Hunter's affidavit is silent on the steps taken, if any, by himself or counsel to identify any eyewitnesses to the murder prior to trial or within 120 days of the verdict"); *State v. Shakoor*, 2010-Ohio-6386, ¶ 20 (7th Dist.) (neither the motion nor the affidavit provided "a clear explanation as to why Shakoor was unavoidably prevented from discovering the recantation"); *State v. Golden*, 2010-Ohio-4438, ¶ 19 (10th Dist.) ("appellant does not explain the investigative actions taken or why he was unavoidably prevented from discovering Jennings as a potential witness").

**{¶18}** We agree with the trial court's view that the affidavit Woods presented from Mary Roe offers at best a weak explanation as to why Woods could not have discovered the new evidence within the rule's time limit. Nothing in the affidavit or in Woods's motion tells us what, if any, efforts, before the trial or soon after it was finished, Woods and his trial lawyers made to track down Roe and others who may have been present when the shooting occurred. We cannot tell whether Woods first contacted Roe or vice versa, and we do not know when that first contact took place. The affidavit refers to the death of Leroy Dixon — the real killer, according to Mary Roe — but does not tell us when Dixon died or whether that death occurred before or after the rule's 120-day period. And though Woods suggests that Roe was too fearful to come forward until after Dixon had died, Roe herself does not link Dixon's death to her current willingness to offer testimony.

**{¶19}** In short, the affidavit does not provide the necessary clear and convincing evidence that might demonstrate that Woods could not, even with reasonable diligence and effort, have learned about Roe's claims concerning the alleged real killer before the 120-day period set by Criminal Rule 33(B) had expired. *See State v. Barnes*, 2018-Ohio-

1585, ¶ 34 (5th Dist.) (appellant "has not shown, through the affidavits submitted, that [the witness] was unknown" or could not reasonably be discovered) (citation omitted).

{¶20}The "'phrases 'unavoidably prevented' and 'clear and convincing proof' do not allow one to claim that evidence was undiscoverable simply because affidavits were not obtained sooner.'" *State v. Thornton*, 2017-Ohio-637, ¶ 48 (5th Dist.), quoting *State v. Williams*, 2003-Ohio-5873, ¶ 21 (12th Dist.). The reasonable-diligence requirement in Crim.R. 33(A)(6) "infers that an attorney will use reasonable efforts and reasonable foresight to procure evidence." *Barnes*, 2018-Ohio-1585, at ¶ 35 (5th Dist.).

{¶21} The kind of clear and convincing proof that Woods would need to offer to clear the unavoidably-prevented hurdle is lacking in the record before us, and we are not persuaded that Mary Roe could not have been tracked down and interviewed as a potential defense witness before or soon after the trial. Particularly in light of the fact that we are searching solely for an abuse of discretion on the part of the trial court, we readily conclude that the trial judge acted well within the bounds of her discretion when she found that Woods failed to show that he was unavoidably prevented from discovering the new evidence supporting his new-trial request before Criminal Rule 33(B)'s 120-day period had ended. In light of the trial judge's finding on that issue, the judge rightly declined to reach the merits of Woods' new-trial claim.

**The Trial Court Acted Within the Scope of its Discretion When that Court Acted on Woods's New-Trial Request Without Holding a Hearing**

{¶22} In his second assignment of error, Woods argues that the trial court abused its discretion by not conducting a hearing on his motion for permission to file a motion for a new trial. That argument is a nonstarter in the wake of our conclusion that Woods did not provide to the trial court the requisite clear-and-convincing proof that he had been

unavoidably prevented from presenting his new evidence before Criminal Rule 33(B)'s 120-day period had run.

{¶23} A trial court has discretion to decide whether to hold a hearing on a criminal defendant's motion for permission to file a motion for a new trial, and we typically will not overturn such a decision unless the court acts outside the scope of its discretion. *State v. Armengau*, 2017-Ohio-197, ¶ 33 (10th Dist.). *See also State v. Sutton*, 2016-Ohio-7612, ¶ 24 (8th Dist.) ("The decision whether to grant or hold an evidentiary hearing on a defendant's request for leave to file a delayed motion for new trial falls within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of that discretion") (citation and quotations omitted).

{¶24} We have explained that "no hearing is required, and leave may be summarily denied, where neither the motion nor its supporting affidavits embody prima facie evidence of unavoidable delay." *State v. Baldwin*, 2014-Ohio-290, ¶ 24 (5th Dist.). *See also State v. McFarland*, 2025-Ohio-5850, ¶ 29 (8th Dist.) ("A defendant is entitled to a hearing on his or her motion for leave to file a motion for new trial only if the submitted documents demonstrate that the defendant was unavoidably prevented from timely discovering the grounds for the motion") (citation and quotations omitted); *State v. White*, 2024-Ohio-5789, ¶ 13 (10th Dist.) ("A criminal defendant is only entitled to a hearing on a motion for leave to move for a new trial if he submits documents that support his claim that he was unavoidably prevented from timely discovering the evidence at issue").

{¶25} As we explained above, Woods bore the burden of proving that he had been unavoidably prevented from discovering the new evidence on which his new-trial request was based. And Woods was obligated to present that clear and convincing proof "at the

time he file[d]" his request for permission to file a new-trial motion. *Johnson*, 2024-Ohio-134, at ¶ 26 (addressing the "unavoidably prevented" language in the post-conviction provision found in R.C. 2953.23(A)(1)(a) and explaining that "[i]f testimony can be elicited at a hearing, it can be attested to in an affidavit").

{¶26} In light of our conclusion that Woods did not clear the unavoidably-prevented hurdle with the evidence that he offered to support his new-trial request, we likewise readily conclude that the trial court had no obligation to conduct a hearing on Woods's request.

{¶27} For these reasons, the judgment of the Court of Common Pleas of Stark County is affirmed. Costs are to be paid by appellant Samuel Woods.

By: Gormley, J.;

Baldwin, P.J. and

Popham, J. concur.